UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LAMARR T. CRITTENDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02159-RLY-DML |
| | ) | |
| MICHAEL MITCHEFF, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Lamarr Crittenden filed this civil rights action pursuant to 42 U.S.C. § 1983, when

he was an inmate in the custody of the Indiana Department of Correction (IDOC) at New Castle

Correctional Facility (New Castle). Dkt. 1. Mr. Crittenden alleges that defendant Dr. Michael

Mitcheff, the Regional Medical Director of Wexford of Indiana, LLC (Wexford), put a restriction

on his prescription pain medication and was deliberately indifferent to his serious medical needs

by failing to prescribe another pain medication. Dkt. 14 at 2. His Eighth Amendment deliberate

indifference claim is proceeding against Dr. Mitcheff.

Dr. Mitcheff seeks resolution of the claim against him through his motion for summary

judgment. Dkt. 40. Mr. Crittenden filed his response in opposition, the defendant filed a reply, and

Mr. Crittenden filed a surreply. Dkts. 47-50. The court has now considered all the briefing on the

dispositive motion. For the reasons explained below, the defendant's motion for summary

judgment, dkt. [40], is **GRANTED**.

### I. Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a

case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no

1

genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II. Material Facts

Because the defendant has moved for summary judgment under Rule 56(a), the court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. Plaintiff's Medical History

At all times relevant to his complaint, Mr. Crittenden was an IDOC inmate at New Castle. Dkt. 1; dkt. 42-2 at 3 (Crittenden Deposition). Mr. Crittenden attests that he was diagnosed with lumbago, lower back pain due in part to swollen tendons. Dkt. 42-2 at 6. On July 19, 2018, Mr. Crittenden was being treated by Dr. Cabrera, a non-party, for his back pain. *Id.*; dkt. 42-3 at 1-2 (medical records). Dr. Cabrera prescribed Mr. Crittenden Naproxen 500 mg for pain,[1] and he could "take 1 tablet by oral route 2 times every day." Dkt. 42-3 at 1-2. The prescription was not set to stop until January 15, 2019. *Id.*

### B. Wexford of Indiana, LLC, and IDOC Medication Formulary

Mr. Crittenden's claim relates to his prescription of Naproxen as directed by Dr. Cabrera. "Naproxen is a formulary medication that is often prescribed by physicians employed by Wexford of Indiana and can be used for a number of different ailments," and it can also be purchased over-the-counter with certain dosage limits pursuant to the FDA and the manufacturer. Dkt. 42-1, ¶ 9 (Mitcheff Affidavit).

Wexford[2] and the IDOC "utilized a medication formulary throughout Wexford's time providing medical services in the State of Indiana." *Id.*, ¶ 4.  Essentially a formulary is a "list of approved medications and dosages, which are commonly used to treat a number of different ailments . . . [and] are used in every facet of medical care, and by major hospital networks." *Id.*

---

[1] "Naproxen is a non-steroidal anti-inflammatory drug that is often used for complaints of chronic joint pain." Dkt. 42-1, ¶ 7.

[2] Wexford of Indiana, LLC, a non-party, was the medical provider in contract with the IDOC to provide medical care to IDOC prisoners during the relevant time period.

Formularies are "used to guide the initial medication decisions and dosages for providers that are addressing common ailments." *Id.*

New Castle physicians, such as Dr. Cabrera, "had the authority to prescribe medications on the formulary without the need for any further paperwork or approval," and they had further "authority to prescribe medications that were not on the approved formulary." *Id.*, ¶ 5. If a medication was not on the approved formulary, New Castle physicians "were required to submit a formulary exception request and receive approval" from the Regional Medical Director. *Id.*

Specific to Naproxen, the IDOC formulary permits physicians to prescribe "up to 28 individual capsules . . . every 60 days," without submission of a formulary exception request. *Id.*, ¶ 10. A physician can prescribe Naproxen at a higher dosage and greater quantity, but in order to do so, the physician must submit a formulary exception request, and it must be approved. *Id.*, ¶ 11. Until the submitting physician receives official approval from the Regional Medical Director, the medication cannot be prescribed under the exception. *Id.*

### C. Dr. Mitcheff's Response to Plaintiff's Grievance

Mr. Crittenden has named Dr. Mitcheff as the sole defendant in this action. Dr. Mitcheff is a licensed physician and from July 2018 through June 2021 was Wexford's Regional Medical Director. *Id.*, ¶ 2. In this role, he has minimal direct patient contact, and the bulk of his duties are administrative, including overseeing healthcare provided by on-site medical staff and reviewing requests from on-site providers for offenders to receive off-site medical care or non-formulary medications. *Id.*, ¶ 3.

Mr. Crittenden testified that he received and took his Naproxen during July 2018, but that on August 14, 2018, he submitted a healthcare request form seeking a refill. Dkt. 42-3 at 8. He learned from the response to this request that the earliest a refill could be issued was September 1,

2018. Dkt. 48-1 at 4. The response indicated that Mr. Crittenden needed to make his 28-tablet supply last for 60 days. *Id.* On August 27, 2018, Mr. Crittenden submitted another healthcare request form related to the same issue, and this time, the response indicated that he needed to make 14-tablets last per month and that the Regional Medical Director "placed this restriction on the formulary." *Id.* at 5. As it relates to this response and the reference to the Regional Medical Director, Mr. Crittenden testified he has never met Dr. Mitcheff or conversed with him face-to-face, nor has he written him any letters. Dkt. 42-2 at 6. Mr. Crittenden admits that the response to this healthcare request form does not say that Dr. Mitcheff had been contacted related to Mr. Crittenden's Naproxen prescription at that time. *Id.* at 10.

In September 2018, Mr. Crittenden submitted a formal grievance that was received later that month and responded to on October 17, 2018. Dkt. 48-1 at 8. This response indicated Mr. Crittenden's "case and concern was discussed with the Regional Medical Director . . . . After review of your records, you have been advised to use Tylenol, as it is much safer over time and can be found on commissary."[3] *Id.* The response indicated that the Regional Medical Director—Dr. Mitcheff—advised Mr. Crittenden to do daily stretching, attempt weight loss, and rest this back,

---

[3] Mr. Crittenden disputes that Tylenol could be purchased on the commissary, and he attests that he was "never advised by any physician to use Tylenol and was not informed of this fact until the response to his formal grievance." Dkt. 48-1, ¶ 9. However, the list of available commissary items in the record, dkt. 48-1, indicates that "non-aspirin pain relief tabs" were available for purchase. Tylenol, or acetaminophen, "is known as a non-aspirin pain reliever." *See* Over-the-counter pain relievers, *available at* www.medplus.gov (last visited Sept. 24, 2022).

To the extent that Mr. Crittenden makes this argument to attempt to establish a genuine issue of material fact, the court is unpersuaded. There is no evidence in the record to support that Tylenol or a generic form was not available for purchase on the commissary, or that Dr. Mitcheff was somehow aware that Mr. Crittenden did not have access to Tylenol as a supplement between his allotted doses of Naproxen. Mr. Crittenden's argument that Dr. Mitcheff was deliberately indifferent to his needs by failing to explain that Tylenol has a generic form is unpersuasive – Mr. Crittenden could have raised questions about Tylenol, its generic form, and its availability on commissary with staff at the facility or his on-site medical provider. Moreover, over-the-counter medications contain information for the layperson describing the drug, intended and directed use, and side effects.

as an x-ray of his back was normal. *Id.* The response explained to Mr. Crittenden that per the pharmacy guideline, Naproxen "can only be used short term and a maximum of 28 tablets." *Id.*

Based on the grievance records, Dr. Mitcheff believed he was contacted about Mr. Crittenden's grievance in October 2018. Dkt. 42-1, ¶ 17. He was aware that Mr. Crittenden was prescribed Naproxen by Dr. Cabrera, but that no formulary exception request was submitted to adjust the prescription beyond what was allotted under the formulary. *Id.* Dr. Mitcheff did not see a concern with the current dosage consistent with the formulary and determined that if Mr. Crittenden wanted additional pain medication he could safely supplement with Tylenol from the commissary. *Id.* While Dr. Mitcheff did not actually author the grievance response Mr. Crittenden received, he agreed with the treatment plan. *Id.* "Mr. Crittenden continued to have the ability to submit a healthcare request for evaluation, and Dr. Cabrera continued to have the ability to submit a formulary exception request if he believed it necessary." *Id.*

Dr. Mitcheff attests that he did not place the restriction on Naproxen on the IDOC formulary, but he agrees with this process. *Id.*, ¶ 14. Despite Naproxen being an over-the-counter medication, "it is a non-steroidal anti-inflammatory drug, and when prescribed in high dosages for long periods of time, carries a risk of side effects, and therefore, requir[es] physicians to submit a formulary exception request and explain [that] the level of dosing and length of time is an appropriate procedure." *Id.* Dr. Mitcheff did not recall making any change to Mr. Crittenden's prescription in July 2018 or the formulary itself; at this time he had recently assumed his role as Regional Medical Director and "would not have made any changes at that time to the IDOC formulary[.]" *Id.*, ¶ 15. He was generally aware of the formulary due to his work as Regional Medical Director for the previous medical provider, Corizon. *Id.*

Dr. Mitcheff was not aware of, and the record does not indicate, any further request Mr. Crittenden made for medical treatment or to see a primary provider for his condition for the next six months. *Id.*, ¶ 16. He was "also not aware of Mr. Crittenden being diagnosed with any significant or serious abnormalities, such that stronger or more frequent medication was required throughout late 2018 or early 2019." *Id.*

### III. Discussion

Because Mr. Crittenden was a convicted prisoner at all relevant times, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "

To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727-28 (7th Cir. 2016) (en banc). The defendant does not dispute that Mr. Crittenden's lower back condition and associated pain constituted a serious medical condition. Thus, the availability of judgment as a matter of law turns on whether there is sufficient evidence upon which a reasonable jury could conclude that the defendant was deliberately indifferent to Mr. Crittenden's medical condition or associated pain.

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This is a subjective test: "[t]he defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Id.*; *Petties*, 836 F.3d at 728. A court should "look at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties*, 836 F.3d at 728.

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

Mr. Crittenden does not have a constitutional right to demand specific medications or treatment. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible . . . ." Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm."). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would

have [recommended the same] under the circumstances." *Pyle*s, 771 F.3d at 409. "Disagreement between a prisoner and his doctor, or even between medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted).

Dr. Mitcheff argues that he did not violate Mr. Crittenden's Eighth Amendment rights because he "did not place any improper restriction on the Plaintiff's receipt of Naproxen," that the restriction was placed in accordance with the IDOC formulary, and that the care and treatment provided to Mr. Crittenden during this time was appropriate. Dkt. 40 at 2. The court agrees.

Mr. Crittenden testified that he based this lawsuit on the response he received from his August 2018 healthcare request form that indicated a restriction had been placed on the IDOC formulary for Naproxen by the Regional Medical Director. Dkt. 42-2 at 6. Though Mr. Crittenden believes that Dr. Mitcheff made a personal decision to restrict his Naproxen in August 2018, the record shows that Naproxen, because of certain risks of its long-term use, is subject to the IDOC formulary and must be provided in accordance with it. Dr. Mitcheff explained that "[n]o physician placed 'restrictions' on the prescription of Naproxen. It has been on the IDOC Formulary Drug List . . . since at least December 2017." Dkt. 48-1 at 16 (Mitcheff interrogatory responses). Dr. Mitcheff further attests that having just assumed his role as Regional Medical Director during the relevant time, he had not made any decision regarding the IDOC formulary restrictions himself, but that in his medical judgment, the process for Naproxen was appropriate. The defendant argues that *even if*, in the light most favorable to Mr. Crittenden, Dr. Mitcheff had as Regional Medical Director created the limitation for the formulary on Naproxen, it would not amount to deliberate indifference because such restriction with the ability to submit an exception request was not improper. Dkt. 49 at 5. The court agrees.

9

A it relates to his August 2018 grievance, Mr. Crittenden admits that the response did not say that Dr. Mitcheff was ever contacted at this time to discuss his issue. Rather, the record indicates that Dr. Mitcheff was not made aware of any issue with Mr. Crittenden's prescription until October 2018. Then, it is undisputed that Dr. Mitcheff did not have direct patient contact with Mr. Crittenden, rather, Dr. Cabrera, his primary on-site provider elected to prescribe Naproxen for his back pain. In October 2018, after review of Mr. Crittenden's medical record and in his medical judgment, Dr. Mitcheff saw no reason to deviate from Dr. Cabrera's treatment plan or the IDOC formulary. Rather, Dr. Mitcheff assessed that Naproxen "can be determinantal to the liver and kidneys[.]" Dkt. 48-1 at 15. And perhaps most significantly, it is undisputed that Dr. Cabrera had not determined that Mr. Crittenden's condition was such that a formulary exception request for additional Naproxen beyond the IDOC formulary allowance was deemed medically necessary or was ever requested. Dr. Mitcheff found no significant or severe abnormalities related to Mr. Crittenden's condition to warrant any exception and recommended over-the-counter Tylenol in addition to stretching, weight loss, and rest, to supplement the existing regime of Naproxen.

To the extent that Mr. Crittenden argues he had chronic pain and that Dr. Mitcheff should have done more to eliminate his pain by directing that he be provided with other options, he has not shown that his treatment was ineffective. *See, e.g., Leiser v. Hoffmann, et al.*, 2021 WL 3028147, at *3 (7th Cir. July 19, 2021) ("[D]octors are not deliberately indifferent when they are unable to eliminate completely a patient's pain.") (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Mr. Crittenden's argument that Dr. Mitcheff could have provided a different prescription level pain medication to replace Naproxen is unavailing. Dkt. 48 at 7. It is undisputed that Dr. Mitcheff does not frequently engage in direct patient care and had not himself examined or treated Mr. Crittenden, and that Mr. Crittenden had access to see his on-site provider for further

medical needs or follow up discussion about his condition and pain medication. Mr. Crittenden has presented no evidence that Dr. Mitcheff's medical judgment based on review of his medical record was so far afoul of standard medical practice, nor has he presented medical evidence that Tylenol was not a reasonable supplement in addition to the limited dosage of Naproxen or that any other medication was necessary.

Even more telling, after Mr. Crittenden received the grievance response in October 2018, it is undisputed that he never requested any further medical treatment or followed up with his on-site provider for over six months. In such time, he could have presumably discussed treatment options with Dr. Cabrera, inquired about a higher or longer dosage of Naproxen such that determination for a formulary exception request could have been addressed, and expressed his concerns that Tylenol was not accessible to him, or if it was, that it was ineffective for his pain.

In sum, though Mr. Crittenden was dissatisfied with the IDOC formulary's restriction on his prescription for Naproxen, he has not shown that Dr. Mitcheff was personally responsible for restricting his prescription or that his response to Mr. Crittenden's grievance was medically inappropriate. Mr. Crittenden is not entitled to demand specific care, and the record indicates Dr. Mitcheff exercised his medical judgment in his response to Mr. Crittenden's concerns. "[M]ere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation." *Cesal v. Moats*, 851 F.3d 714, 723 (7th Cir. 2017) (quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

No reasonable fact-finder could conclude that Dr. Mitcheff was deliberately indifferent to Mr. Crittenden's medical needs, and therefore, he is entitled to summary judgment.

## IV. Conclusion

For the reasons explained above, the defendant's motion for summary judgment, dkt. [40],

is **GRANTED.**

Final Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 9/28/2022

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LAMARR T. CRITTENDEN
422 E Washington St
Rm 311
Indianapolis, IN 46204

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com